Diane W. CERIBELLI, Margot Whittemore, James F. Balsley, Bruce Stinson, John W. Moore and Helen Crane, Plaintiffs–Appellants,

v.

H. Henry ELGHANAYAN, Kamran T. Elghanayan and Frederick Elghanayan, Defendants–Appellees.

No. 1119, Docket 92–7984.

United States Court of Appeals, Second Circuit.

Submitted March 1, 1993.

Decided April 2, 1993.

Gary Farrell, New York City, submitted a brief for plaintiffs-appellants.

Robert J. Zastrow, Randy L. Shapiro, Mark Manderosian, Stroock & Stroock & Lavan, New York City, submitted a brief for defendants-appellees.

Before NEWMAN and WINTER, Circuit Judges, and CARMAN,* Judge, U.S. Court of International Trade.

JON O. NEWMAN, Circuit Judge:

This case concerns the scope of shareholder standing in civil RICO actions. The issue arises on the appeal of plaintiffs Diane W. Ceribelli, Margot Whittemore, James F. Balsley, Bruce Stinson, John W. Moore, and Helen Crane from the August 12, 1992, judgment of the District Court for the Southern District of New York (Kenneth Conboy, Judge) dismissing for lack of standing their complaint against the sponsors of a residential cooperative. The complaint alleged that the sponsors had concealed defects in the building, and that the defects, once discovered, resulted in diminution in the value of plaintiffs' shares and related increased maintenance expenditures. On appeal, plaintiffs argue that they have standing to pursue their claims because the sponsors not only injured the cooperative corporation but also, through racketeering acts including mail fraud, injured the plaintiffs directly. We agree that the plaintiffs have stated a claim of direct injury, and accordingly reverse the judgment of the District Court.

---

* The Honorable Gregory W. Carman, sitting by designation.

## Background

The complaint, which we accept as true for purposes of this appeal, contains the following allegations. In 1972 defendants H. Henry Elghanayan, Kamran T. Elghanayan, and Frederick Elghanayan formed Landmark Restoration Co. for the purpose of purchasing and operating a multiple dwelling unit located at 15 East 11th Street in Manhattan. In 1973, defendants performed renovations on the property, and in 1982, defendants sponsored the conversion of the property to a cooperative owned by 15 East 11th Apartment Corp. (the "Cooperative"). In reliance on a mailed offering statement and amendments, plaintiffs or their predecessors in interest entered into agreements to purchase shares and became shareholders of the Cooperative. In 1989, it was discovered that the slabs between the floors of the property were severely deteriorated and would require expensive repairs. Plaintiffs contend that defendants knew of this deterioration from their earlier renovations and failed to disclose it in the offering materials. The plaintiffs further claim that the mailings of the offering materials and amendments constitute mail fraud, in violation of 18 U.S.C. § 1341 (Supp. III 1991), a predicate act of racketeering, *see* 18 U.S.C. § 1961(1)(B) (Supp. III 1991), and together comprise a pattern of racketeering activity, *see* 18 U.S.C. § 1961(5) (1988).

The District Court concluded that plaintiffs lacked standing under our decision in *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), where we held that a shareholder lacks standing under RICO when his injury consists of only a decrease in the value of his shares. The District Court observed that the allegations in the complaint were essentially the same as those in a state court complaint brought by the Cooperative, and that a recovery by the Cooperative would make the plaintiffs whole. Although the District Court recognized that privity between the plaintiffs and the defendants tended to distinguish this case from *Rand*, the District Court believed that standing would be appropriate only if the

defendants had breached fiduciary duties owed to the plaintiffs. Concluding that no such duties had been alleged or could exist as a matter of law in New York, the District Court dismissed the complaint with prejudice.

## Discussion

In *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989), we explained that our decision in *Rand* "merely recognized a standing requirement applicable throughout corporate law," *id.* at 1101, based on the distinction between direct actions and derivative actions. The plaintiffs in *Bankers Trust*, creditors of a bankrupt corporation, sought recovery for acts of bankruptcy fraud and bribery that concealed a corporate asset during reorganization. Because the creditors suffered injuries "directly," we allowed them to pursue their civil RICO claim notwithstanding the possibility that the bankrupt corporation "might also have suffered an identical injury for which it has a similar right of recovery." *Id.*

■ Our task, then, is to determine whether the shareholders' claim in this case can be brought directly or only derivatively. The result is the same whether, in applying federal law, we look to general principles of common law, as suggested by *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 545 (6th Cir.1985), and perhaps by *Bankers Trust*, 859 F.2d at 1101 (citing *Warren*), or borrow from applicable state law (here, New York), *see In re Sunshine Securities Litigation*, 916 F.2d 874, 879–82 (3d Cir.1990); *Leach v. Federal Deposit Insurance Corp.*, 860 F.2d 1266, 1274 & n. 14 (5th Cir.1988), *cert. denied*, 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989). Under New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, *see Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783, 489 N.E.2d 751, 752 (1985), whether or not the corporation may also bring an action, *see Fifty States Management Corp. v. Niagara Permanent Savings and Loan*

*Ass'n*, 58 A.D.2d 177, 179, 396 N.Y.S.2d 925, 927 (4th Dep't 1977). This principle is consistent with the general common law rule. *See* American Law Institute, *Principles of Corp. Governance* § 7.01(b)–(c) (Proposed Final Draft 1992).

The availability of a direct action by the shareholder does not turn on whether the independent duty breached was a "fiduciary duty," as the District Court believed. Although *Qantel Corp. v. Niemuller*, 771 F.Supp. 1361, 1366–67 (S.D.N.Y. 1991), relied on by the District Court, indicated that shareholder standing was available when a defendant breached a fiduciary duty owed to the shareholder, the decision did not limit standing to cases involving such breaches. Of course a fiduciary has greater duties than a non-fiduciary. But a fiduciary relationship is not a required element of every fraud case. For instance, Rule 10b–5 prohibits even a stranger from making an intentional misrepresentation in connection with the sale of securities, *see Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 813 (9th Cir.1981), and New York law recognizes a duty to disclose, absent any fiduciary relationship, when one party has superior knowledge not readily available to the other party, *see Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 151–52 (2d Cir.1993). There is no basis for applying a stricter rule when the wrongful acts of the defendant also create a cause of action in favor of the corporation. *See generally* 12B William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5921, at 451–53 (perm. ed. rev. vol. 1984).

In the pending case, the availability of a direct action is closely related to the process by which the Cooperative was formed. If, after the shareholders had subscribed for shares, the newly formed corporation then had used its capital to purchase the building (the condition of which was misrepresented) from the sponsor, it is doubtful that the shareholders could pursue a direct action. A generous reading of the complaint, however, suggests that the Cooperative was formed by the defendants, who, after transferring the over-valued building in exchange for stock, sold the stock to the shareholders.[1] If this allegation is true, the sponsor as promoter has breached a fiduciary duty to the corporation, and as seller of stock has breached a duty to the shareholders. The shareholders can maintain a direct action, *see Siegel v. Engelmann*, 1 Misc.2d 447, 448–49, 143 N.Y.S.2d 193, 194–95 (Sup.Ct.1955); American Law Institute, *Principles of Corp. Governance* § 7.01 reporter's note 3, at 618 (direct action available for "the making of intentionally or negligently deceptive misstatements to the shareholder in connection with a sale of stock") (citing cases), notwithstanding the possible availability of a derivative action,[2] although damages may be limited so as to avoid a double recovery, *see id.* reporter's note 6, at 622–23. To the extent that the shareholders can satisfy the further requirement of establishing that their injuries were caused by a pattern of racketeering activity, *see* 18 U.S.C. §§ 1961(5), 1962(c) (1988); *Beauford v. Helmsley*, 865 F.2d 1386, 1390–92 (2d Cir.) (in banc), *vacated and remanded*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to on remand*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), they may bring

---

1. The complaint is ambiguous as to whether certain plaintiffs acquired their shares from the defendants directly, or through intermediaries. We leave it to the District Court to sort out the factual allegations and to determine in the first instance whether RICO allows a secondary purchaser to recover for mail fraud directed at a predecessor in interest. *Cf. Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F.Supp. 1252, 1261 (S.D.N.Y.1988) (Rule 10b–5 may permit recovery for misleading statements to third party).

2. Because our decision does not depend on whether the Cooperative possesses a cause of action against the promoters, we need not decide whether such an action exists. At common law, courts split on the availability of a fraud action by a corporation (under a new board) against promoters who at the time of the fraud were the sole shareholders. *See* 1A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 196.10, at 379–81 (perm. ed. rev. vol. 1993); *cf. Miller v. San Sebastian Gold Mines, Inc.*, 540 F.2d 807, 809–10 (5th Cir.1976) (allowing Rule 10b–5 action against promoters).

suit under the private action provision of RICO. *See Holmes v. Securities Investor Protection Corp.,* — U.S. ——, —— n. 19, 112 S.Ct. 1311, 1320 n. 19, 117 L.Ed.2d 532 (1992) (dicta); *Quaknine v. MacFarlane,* 897 F.2d 75, 79–82 (2d Cir.1990); *In re Par Pharmaceutical, Inc. Securities Litigation,* 733 F.Supp. 668, 685 (S.D.N.Y.1990).[3]

### Conclusion

The judgment of the District Court is reversed and the matter is remanded for further proceedings consistent with this decision.

---

**3.** The complaint also sufficiently alleges that the wrongful acts of the defendants were the proximate cause of the plaintiffs' injuries, as required for recovery under civil RICO. *See Holmes v. Securities Investor Protection Corp.,* — U.S. at ——–——, 112 S.Ct. at 1316–18. When misrepresentations induce a buyer to purchase stock, and the losses suffered are a foreseeable consequence of the misrepresentations, the misrepresentations proximately cause the buyer's injuries. *See Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 20–22 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).