11 F.3d 1127
 RICO Bus.Disp.Guide 8445
 David MANSON; Mark Manson, Appellants,
v.
Anca STACESCU; David Fitzpatrick; Giulio Monaco; Trager &
Trager; Westfield Management, Inc.; John Kalakay; Jeffrey
Greives; John J. Stavola; Richard Winter; Kenneth Regan;
Lawrence Brauner; Donald Luzetsky; Fred Paoletti;
Brennan, McNamara & Baldwin, P.C.; General Electric Supply
Company; Capitol Light & Supply, Inc.; Warren
Pfaffenberger; Kathleen Fitzpatrick Miranti; Daniel
Brennan, Esq.; David Shaw; John A. Stavola; Connecticut
National Bank; George Geignetter; Louis R. Martino;
Donald Petito; J.C. Penney Co.; Shawmut Bank, NA, Shawmut
Bank Connecticut, National Association, Appellees.
 No. 338, Docket 93-7417.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 24, 1993.
Decided Dec. 13, 1993.
 
 H. Owen Chace, Branford, CT, for appellants.
 David P. Atkins, Bridgeport, CT (Jacob D. Zeldes, Beverly S. Knapp, and Zeldes, Needle & Cooper, on the brief), for appellee Trager & Trager.
 Ronald J. Cohen, New Haven, CT (Tyler Cooper & Alcorn, on the brief), for appellee General Elec. Supply Co.
 James T. Cowdery, Robert W. Werner, and Chatigny & Cowdery, Hartford, CT, submitted a brief for appellee Westfield Management, Inc.
 John F. Kalakay, Bridgeport, CT, submitted a brief pro se.
 James F. Stapleton, and Day, Berry & Howard, Stamford, CT, submitted a brief for appellees Richard Winter, Daniel E. Brennan, Jr., and Brennan, McNamara & Baldwin.
 Alan I. Scheer, Elliott B. Pollack, Joseph B. Burns, and Hoberman & Pollack, Hartford, CT, submitted a brief for appellees Kenneth Regan and Capitol Light & Supply, Inc.
 Raymond W. Ganim, and Lisa A. Ricci-Knopf, Stratford, CT, submitted a brief for appellee Warren Pfaffenberger.
 Kathleen F. Miranti, Trumbull, CT, submitted a brief pro se.
 John B. Rizo, Sr., Plano, TX, submitted a brief for appellees J.C. Penney Co., Inc. and Donald Petito.
 Richard P. Swanson, Pamela C. Tames, and Reid & Priest, New York City, submitted an amicus brief for GICC Capital Corp. in support of appellants.
 Before: TIMBERS, MESKILL, and ALTIMARI, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 David Manson and Mark Manson (the Mansons) appeal from a judgment entered in the District of Connecticut, Warren W. Eginton, District Judge,823 F.Supp. 76, dismissing their action which sought relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68 (1988). The court held that the Mansons do not have standing to commence an action under RICO and denied the Mansons' motion for leave to amend their complaint to allege additional facts relating to standing. On appeal, the Mansons contend that the court erred in holding that they do not have standing under RICO and that the court abused its discretion in denying their motion for leave to amend their complaint.
 
 
 2
 We reject the Mansons' claims. We affirm the district court's judgment in all respects.
 
 I.
 
 3
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 4
 The Mansons commenced this RICO action against twenty-six defendants for alleged abuses against the Stavola-Manson Electrical Construction Company, Inc. (the Company). David Manson is a director, president, and fifty percent shareholder of the Company. Appellee Anca Stacescu is the other fifty percent shareholder. David Manson and Mark Manson are personal obligors on a $450,000 loan to the Company.
 
 
 5
 The Mansons allege that appellees, who include persons both inside and outside the Company, engaged in a pattern of racketeering activity through a criminal enterprise masterminded by the other director of the Company, Jay Stavola. Appellees allegedly committed various felonious acts, including bribery of a labor union official, attempted extortion, money laundering, threatened murder, credit card fraud, bankruptcy fraud, obstruction of justice, mail fraud, and conspiracy in violation of RICO. These acts allegedly were part of a scheme through which appellees looted the Company to the point of bankruptcy in order to enrich themselves.
 
 
 6
 In 1988, after the Company had sustained heavy losses, David Manson petitioned for chapter eleven bankruptcy relief and filed a derivative action on behalf of the Company. The Mansons allege that David Fitzpatrick, the attorney for Jay Stavola and several other appellees, manufactured evidence and submitted it to the bankruptcy court in order to persuade the court to dismiss the petition. After the court dismissed the petition, Fitzpatrick asked the court to appoint Richard Winter as the receiver for the Company and he was. Fitzpatrick allegedly selected Winter with the understanding that Winter either would not seek to recover debts owed to the Company by Fitzpatrick's clients or would settle debts for substantially less than the amounts owed.
 
 
 7
 Since being appointed receiver, Winter allegedly has failed to act in the best interests of the Company. Winter has pursued only two actions on behalf of the Company and settled both for substantially less than the amount owed. When David Manson inquired about these settlements, Jay Stavola and others allegedly threatened him with financial ruin and murder if he refused to "back off". The Mansons also allege that Winter is covering up appellees' fraudulent scheme by intentionally failing to pursue the derivative action filed by David Manson. The Mansons further allege that as a result they cannot obtain relief under state law.
 
 
 8
 The Mansons claim that appellees' acts injured them personally. David Manson claims that he has lost earnings and profits in the Company and has sustained injury to his reputation and business credit. In addition, he and Mark Manson claim that they have sustained damages by virtue of their personal liability on the Company's $450,000 loan.
 
 
 9
 On March 23, 1993, the district court held that the case should be dismissed for want of standing. The court held that the Mansons do not have standing as creditors of the Company and that David Manson does not have standing either as a shareholder or as an employee of the Company. The Mansons subsequently moved for leave to amend their complaint to allege additional facts relating to standing. The court denied the Mansons' motion for leave to amend their complaint on the ground that it was moot. On April 27, 1993, the court entered an order dismissing the action as to all appellees.
 
 
 10
 On appeal, the Mansons contend that (1) the court erred in holding that the Mansons do not have standing to commence an individual RICO action regarding the looting of a company to which the Mansons are personal obligors on a loan and in which David Manson is a fifty percent shareholder and employee and (2) the court abused its discretion in denying the Mansons' motion for leave to amend their complaint.
 
 II.
 
 11
 (A) STANDING
 
 
 12
 The standing provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold the damages he sustains". 18 U.S.C. Sec. 1964(c) (1988). The Supreme Court has interpreted this language as limiting standing to plaintiffs whose injuries were caused proximately by the RICO predicate acts. Holmes v. Securities Investor Protection Corp., 503 U.S. ----, ----, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). A central element of proximate cause is a showing of some "direct relation between the injury asserted and the injurious conduct alleged". Id.
 
 
 13
 The district court reasoned that the Company was the primary victim of the RICO conspiracy alleged by the Mansons and that the Mansons' injuries in their capacities as creditors, shareholder, and employee were derivative of the Company's injuries. The court held, therefore, that the Mansons' injuries were not caused proximately by the alleged conduct and that the Mansons do not have standing to seek relief under RICO. Our standard of review of the district court's holding, which is a ruling of law, is de novo.
 
 
 14
 (1) Standing As Obligors
 
 
 15
 The Mansons claim that they have standing as obligors on a $450,000 loan to the Company. Since the Company allegedly cannot pay its loan obligations, the Mansons are responsible personally for the repayment of this loan and have become creditors of the Company. Creditors of a bankrupt corporation, however, generally do not have standing under RICO. E.g., Mid-State Fertilizer Co. v. Exchange Nat. Bank, 877 F.2d 1333, 1336-37 (7 Cir.1989). The creditor generally sustains injury only because he has a claim against the corporation. The creditor's injury is derivative of that of the corporation and is not caused proximately by the RICO violations. Id.
 
 
 16
 We have recognized a narrow exception to the general rule denying creditors standing. In Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100-01 (2 Cir.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), we held that creditors of a bankrupt company had standing to bring an individual RICO action when they had sustained a direct injury. Specifically, the creditors in Bankers Trust were forced to defend against frivolous lawsuits filed to harass them and to cause them monetary loss over and above that caused by the company's bankruptcy. Id. at 1101. Furthermore, the defendants in Bankers Trust had made a fraudulent conveyance for the direct purpose of insulating the corporation from its creditors. Id.
 
 
 17
 Unlike the plaintiffs in Bankers Trust, the Mansons do not allege a direct injury. The alleged looting of the Company only harmed the Mansons indirectly. Furthermore, since the Mansons are personal obligors on a corporate bank loan and not primary creditors of the Company, the Mansons did not become liable until the looting of the Company rendered the corporation unable to pay its debts. If the Company were to recover its assets, the Mansons' injuries would be cured. The Mansons' injuries are even further down the chain of causation than those sustained by primary creditors.
 
 
 18
 We hold that the Mansons do not have standing in their capacities as obligors.
 
 
 19
 (2) Standing As Shareholder
 
 
 20
 The Mansons claim that David Manson has standing to sue as a fifty percent shareholder of the Company. A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock. Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2 Cir.), cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). This is true even when the plaintiff is the sole shareholder of the injured corporation. Sound Video Unlimited, Inc. v. Video Shack, Inc., 700 F.Supp. 127, 136 (S.D.N.Y.1988). Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct. Holmes v. Securities Investor Protection Corp., supra, 503 U.S. at ----, 112 S.Ct. at 1318.
 
 
 21
 The Mansons claim that, by looting the Company, appellees violated their fiduciary duties to David Manson in his capacity as a shareholder. The Mansons assert that such a claim states a personal, not a derivative, cause of action. Yanow v. Teal Industries, Inc., 178 Conn. 262, 281-83, 422 A.2d 311, 321-22 (1979) (holding that a minority shareholder had standing to assert state law claims against a majority shareholder who looted the corporation). The district court, however, held that the Mansons' complaint did not allege a breach of fiduciary duty and denied the Mansons' motion for leave to amend their complaint specifically to allege such a breach.
 
 
 22
 Even if the court had permitted the Mansons to amend their complaint to include such an allegation, David Manson would not have standing to assert a federal RICO claim. We recognized a special duty exception in the context of RICO actions in Ceribelli v. Elghanayan, 990 F.2d 62, 63-65 (2 Cir.1993), but we suggested that that exception is limited to cases in which the shareholder sustains an injury that is separate and distinct from the injury sustained by the corporation. Id. at 64; see also Vincel v. White Motor Corp., 521 F.2d 1113, 1121 (2 Cir.1975) (holding that shareholders cannot assert a direct action when the duty owed to them is the same as that owed to the corporation).
 
 
 23
 In Ceribelli, the defendants fraudulently failed to disclose material information prior to the shareholders' purchase of their shares. Supra, 990 F.2d at 64. Unlike David Manson, the shareholder in Ceribelli was able to allege a breach of an independent duty owed to him in his capacity as a securities purchaser. We reasoned that, if the fraudulent activity had taken place after the purchase of the shares, at which point the shareholder would not have been owed an independent duty as a securities purchaser, a direct action by the shareholder would have been "doubtful". Id. Since the Mansons do not allege that any appellee owed David Manson an independent duty that is distinguishable from the duty owed to the corporation, the special duty exception that we recognized in Ceribelli does not apply to this case.
 
 
 24
 Furthermore, the Mansons cannot claim that any appellees owed David Manson a duty that was separate and distinct from the duty owed to the other shareholder. Courts have recognized an exception to the general rule of not recognizing a shareholder's individual claim where the injury sustained by the shareholder is separate and distinct from that sustained by other shareholders. E.g., Sax v. World Wide Press, Inc., 809 F.2d 610, 614 (9 Cir.1987). Here, however, the other shareholder, Anca Stacescu, also sustained losses in the value of her shares. Even though Stacescu is alleged to have participated in some of the wrongdoing, she and David Manson have sustained the same injury with respect to the value of their shares and both would be made whole by a derivative action. Id. at 614 ("Even if the [majority shareholders] depleted [the corporation's] assets with the sole purpose of decreasing the value of [the minority shareholder's] stock and destroying his return on his investment, the action would nonetheless be derivative."); see also Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 698 (S.D.N.Y.1985) (stating that minority shareholders could not bring individual actions because their injury was not peculiar to them alone but "fell alike" on the shareholders whose fraud had caused the stock value to decline). Even if we were to recognize such an exception, David Manson would not have standing.
 
 
 25
 The Mansons rely heavily on Yanow v. Teal Industries, Inc., supra, 178 Conn. 262, 422 A.2d 311. This Connecticut Supreme Court decision concerning standing to assert a state law claim, however, does not control the instant case, which involves the interpretation of a federal statute and raises important questions of federal policy. There are sound reasons for limiting standing under RICO to plaintiffs whose injuries are personal and directly caused by the RICO violations, particularly when the primary victim of the RICO conspiracy is a corporation.
 
 
 26
 The proximate cause requirement serves the interests of judicial economy by allowing courts to determine in a derivative action one damage award that will restore the corporation and, therefore, its shareholders, creditors, and employees. "[R]ecognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries". Holmes v. Securities Investor Protection Corp., supra, 503 U.S. at ----, 112 S.Ct. at 1318.
 
 
 27
 Furthermore, the standing requirement prevents some claimants from diverting the corporation's assets from other creditors whose claims have priority. Mid-State Fertilizer Co. v. Exchange Nat. Bank, supra, 877 F.2d at 1336. This is a particularly important concern in the context of a RICO action brought by a shareholder, where a treble damage award under RICO would impair the rights of prior claimants to the corporation's assets. Rand v. Anaconda-Ericsson, Inc., supra, 794 F.2d at 849.
 
 
 28
 These important policy concerns counsel strongly against a holding that would ease the requirements for standing under RICO. The Mansons essentially claim that the Company was looted, thereby causing the value of David Manson's shares to decline.
 
 
 29
 Since there is no claim that David Manson sustained injuries that are distinct from those sustained by the corporation or the other shareholder, we hold that David Manson does not have standing as a shareholder.
 
 
 30
 (3) Standing As Employee
 
 
 31
 The Mansons claim that David Manson has standing to sue as president and director of the Company. Employees of a bankrupt corporation, however, like creditors and shareholders, generally do not have standing under RICO. The employee's injury generally is derivative of that of the corporation and does not satisfy RICO's proximate cause requirement. Holmes v. Securities Investor Protection Corp., supra, 503 U.S. at ----, 112 S.Ct. at 1318.
 
 
 32
 For example, in Willis v. Lipton, 947 F.2d 998, 1000-01 (1 Cir.1991), a chief executive officer of a bankrupt corporation claimed that the defendants' RICO conspiracy caused the loss of his employment, damage to his reputation, and legal expenses. The court held that the chief executive officer did not have standing under RICO because his injuries were the indirect result of RICO violations that were aimed at the corporation by which he was employed. Id. Similarly, David Manson's loss of income as president and director is an indirect result of the conspiracy and subsequent bankruptcy of the Company.
 
 
 33
 The Mansons also assert that David Manson was injured by appellees' threats, which were made to intimidate him and to stop him from investigating the alleged scheme. These threats were directed at David Manson because of his positions of employment with the Company. The threats, however, were part of a RICO scheme that was directed at the Company, not David Manson. There is no claim that these threats caused David Manson to sustain any direct injury. To the extent that these threats allowed the alleged conspiracy to succeed, only the Company sustained direct injury, and any injury sustained by David Manson as an employee was an indirect result of the Company's injuries.
 
 
 34
 We hold that David Manson does not have standing as an employee.
 
 
 35
 (4) Availability of State Law Remedies
 
 
 36
 The Mansons argue that dismissal of the federal RICO claim would leave them unable to obtain a forum for redress, resulting in a manifest fraud and injustice against them. According to the Mansons, the receiver's dismissal of David Manson's derivative action has left them without any state law remedies. David Manson, however, has the right under Connecticut law to challenge the receiver's conduct and to move for the discharge of the receiver. Conn.Gen.Stat.Ann. Sec. 52-513 (West 1991). After discharge of the receiver, David Manson could bring another derivative action. Alternatively, David Manson could request permission of the Superior Court to sue the receiver and hold him liable for his fraudulent actions. Hartford Federal Savings & Loan Ass'n v. Tucker, 196 Conn. 172, 178-79, 491 A.2d 1084, 1089, stay denied, 474 U.S. 896,106 S.Ct. 223, 88 L.Ed.2d 222, and cert. denied, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985).
 
 
 37
 The Mansons would prefer to pursue a RICO action in the federal court. David Manson, however, chose to operate his business as a corporation to gain certain advantages. He cannot now avoid the consequences of the corporate structure. One of those consequences is that he does not have standing in his capacity as a creditor, shareholder, or employee of a corporation to assert a RICO claim for injuries that are derivative of those sustained by that corporation. Since the Mansons do have remedies under state law, our holding that they do not have standing to sue under RICO will not result in a manifest fraud or injustice.
 
 
 38
 (B) MOTION TO AMEND THE COMPLAINT
 
 
 39
 The Mansons argue that the court abused its discretion in denying their motion for leave to amend their complaint to include additional facts related to standing. The Supreme Court has held that, absent bad faith or undue delay on the part of the movant, undue prejudice to the opposing party, or futility of the amendment, a court should grant leave to amend a complaint. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In denying the Mansons' motion, the court held that the motion was moot--that is, that it was futile.
 
 
 40
 We hold that the Mansons do not have standing to sue under RICO, even under the additional facts related to standing that they plead in their proposed amended complaint. The Mansons' motion for leave to amend their complaint was futile. The court did not abuse its discretion in denying the motion.
 
 III.
 To summarize:
 
 41
 The court properly held that the Mansons do not have standing to commence an individual RICO action regarding the looting of a company to which the Mansons are personal obligors on a loan and in which David Manson is a fifty percent shareholder and employee. The court did not abuse its discretion in denying the Mansons' motion for leave to amend their complaint.
 
 
 42
 Affirmed.