JERRY KUBECKA, INC., Robert M. Kubecka, Inc., Nina S. Kubecka, Individually and as Administratrix of the Estate of Robert M. Kubecka, Cathy Lynn Kubecka–Barstow, Individually and as Administratrix of the Estates of Donald Edward Barstow and Jerry Kubecka, Plaintiffs,

v.

Salvatore AVELLINO, Anthony Casso, SSC Corporation and Salem Sanitary Carting Corporation, Defendants.

No. CV 94–3022.

United States District Court, E.D. New York.

Aug. 30, 1995.

---

Robert L. Folks, Melville, New York, and Liotti & Skelos (Peter B. Skelos, of counsel), Garden City, New York, for plaintiffs.

Kaplan & Katzberg (Robert F. Katzberg, of counsel), New York City, for defendant Avellino.

George Vlachos, Islandia, New York, for defendant Salem Sanitary Carting Corporation.

Clayman & Rosenberg (Brian D. Linder of counsel), New York City, and Charles G. Eichinger, Islandia, New York, for defendant SSC Corporation.

## AMENDED MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs brought this action against defendants alleging four claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and five New York state law claims.

The plaintiffs consist of two New York corporations and three individuals. Plaintiff Jerry Kubecka is the sole shareholder of the two corporations, Jerry Kubecka, Inc. and Robert M. Kubecka, Inc., referred to hereafter as the Kubecka Corporations. The other two individual plaintiffs are Nina S. Kubecka and Cathy Lynn Kubecka–Barstow. Each sues both individually and as the personal representative of her deceased husband and administratrix of his estate.

The defendants are two individuals, Salvatore Avellino and Anthony Casso, high ranking members of the Lucchese Organized Crime Family (the Lucchese Family), and two New York corporations, SSC Corporation and Salem Sanitary Carting Corporation (Salem Corporation), both allegedly operated and controlled by Avellino.

The complaint alleges, in substance, the following.

Avellino, acting for himself and SSC Corporation and Salem Corporation, and Casso ordered or approved the murders on August 10, 1989 of the two decedents, Robert Kubecka and Donald Barstow. These murders were charged as predicate acts in a sealed 1990 indictment of Avellino, Casso, and others, asserting violations of RICO. On February 17, 1994, Avellino pleaded guilty to conspiring to commit the murders. Avellino also committed various other RICO predicate acts, including the extortion of the Kubeckas, Barstow, and the Kubecka Corporations.

SSC Corporation and Salem Corporation, both controlled by Avellino, and the Kubecka Corporations were engaged in the Long Island carting industry, which Avellino allegedly controlled. Avellino, Casso and others sought to stop the Kubeckas and the Kubecka Corporations from soliciting garbage disposal contracts at stops historically "belonging" to other carters. As retribution for the assistance given by Robert Kubecka and Barstow to prosecuting officials investigating organized crime's control of the Long Island carting industry, Avellino and Casso arranged and directed the murders.

The defendants and others comprise a group of individuals and entities associated in fact and constitute a RICO "enterprise," characterized in the complaint as the Cartel Enterprise. Avellino and Casso conducted and participated in the conduct of the enterprise, which had as its purposes the control of the Long Island carting industry and the obstruction of law enforcement efforts to uncover and prosecute the crimes of the members of the Cartel Enterprise. The crimes described in the complaint constituted a RICO "pattern of racketeering activity." Avellino and Casso directed all of these criminal activities.

The murders injured the Kubecka Corporations by eliminating the executives conducting and supervising their business and by compelling the corporations to cease their business operations and sell their assets at a distress price.

The murders injured the business and property of the individual plaintiffs because they lost the decedents' future earnings, as well as the profits and dividends from the Kubecka Corporations, lost the value of the assets of the Kubecka Corporations sold at a distress price, and lost the funds expended for security measures to protect the individual plaintiffs and their families from Avellino, Casso and their associates.

The Lucchese Family is also a RICO "enterprise." Avellino and Casso conducted and participated in the conduct of the Lucchese Family through the foregoing alleged pattern of racketeering activity.

Each of the widows in her capacity as personal representative and administratrix asserts New York state law claims for battery of her husband and for his wrongful death. Jerry Kubecka brings a claim for loss of the services of his son Robert M. Kubecka.

The complaint also alleges under the heading of "statute of limitations avoided" that Avellino and Casso used fraudulent and violent means to conceal their involvement in the murders so that plaintiffs were unable to learn the facts of their claims against the defendants until Avellino and Casso were indicted, the public media reported testimony of a witness who had withdrawn from the Lucchese Family, and Avellino had pleaded guilty to the murders.

Plaintiffs seek treble damages on the RICO claims and actual damages plus $10,-000,000 punitive damages on the state law claims.

The defendants Avellino, SSC Corporation, and Salem Corporation have moved to dismiss the complaint as insufficient on its face and barred by the applicable statutes of limitations. The plaintiffs have moved for a default judgment against Casso and for summary judgment on the RICO claims.

### STANDING OF INDIVIDUAL PLAINTIFFS TO BRING RICO CLAIMS

■ The RICO claims of the individual plaintiffs, the two administratrices and Jerry Kubecka, assert that they have been injured in their business and property by the murders, the administratrices because they lost the decedents' future earnings, and Jerry Kubecka because he has had a loss of profits and dividends from the Kubecka Corporations, and a loss due to the sale of the assets of those corporations at a distress price. All the individual plaintiffs claim a loss because they incurred expenses to protect themselves and their families against Avellino and Casso.

The RICO statute provides, in pertinent part, 18 U.S.C. § 1964(c), that any person "injured in his business or property by reason of a violation" of RICO "may sue therefor" and recover threefold the damages sustained, plus costs and a reasonable attorney's fee.

The moving defendants say that the individual plaintiffs lack standing to bring the RICO claims.

The analysis of § 1964(c) by the Supreme Court in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), makes it clear that Jerry Kubecka may not recover under that section. As Justice Souter's opinion states, one could read the section to mean that a plaintiff who sustains an injury to his property may recover simply on a showing that the defendant violated RICO, the plaintiff was injured, and the defendant's violation was a

"but for" cause of the injury. *Id.* at 264–66, 112 S.Ct. at 1316. Jerry Kubecka, as sole shareholder of both the Kubecka Corporations, would presumably have a RICO claim under such a reading. His corporations were injured by elimination of their two key executives, and, according to the complaint, his property interest in the value of the corporations whose stock he owned was thereby diminished.

The *Holmes* decision rejects such an expansive reading. Adopting earlier interpretations of the same language in the Clayton Act, the Court held that a plaintiff's right to sue under Section 1964(c) required a showing not only that the defendant's violation was a "but for" cause of the injury but was the "proximate" cause as well. *Id.* at 266, 112 S.Ct. at 1317. This requires "some direct relation" between the injury asserted and the injurious conduct alleged. *Id.* at 268–70, 112 S.Ct. at 1318.

Whatever injury Jerry Kubecka may have suffered to his "property" was in his capacity as the sole shareholder of the Kubecka Corporations. Only insofar as the acts of the defendants first injured the two decedents and their elimination injured the corporations was Jerry Kubecka's property injured. His injury was "purely contingent on the harm suffered" by the decedents and in turn by the Kubecka Corporations. *See id.* at 270–71, 112 S.Ct. at 1319. *See also, Manson v. Stacescu,* 11 F.3d 1127, 1131 (2d Cir.1993) (a shareholder generally does not have standing to bring an individual RICO action for injuries to the corporation "even when the plaintiff is the sole shareholder of the injured corporation.").

The general interest in deterring injurious conduct would be served by permitting the Kubecka Corporations, which suffered a more direct and immediate business injury than did Jerry Kubecka, to vindicate that interest. Indeed, those two corporations seek to do that in this law suit.

The court concludes that the murders of the decedents did not proximately cause an injury to Jerry Kubecka's business or property.

■ The claims of the executrices and personal representatives stand on a different footing. Those claims require the court to focus on whether, within the meaning of 18 U.S.C. § 1964(c), those widows not only are "persons" who "may sue" but also are persons whose "business or property" has been "injured" by the murders. The definition of the word "person" in RICO includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The executrices are certainly "individuals" "capable" of holding a "legal interest" in a "business or property." The words "business" and "property" are not defined in the statute.

New York State provides for a wrongful death action by a personal representative of a decedent survived by "distributees" to recover damages "for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought," namely, the "distributees." N.Y. Est. Powers & Trusts Law (EPTL) §§ 5–4.1, 5–4.3(a).

If Robert M. Kubecka and Barstow had been merely disabled by the attempt on their lives but survived, presumably they would have had a RICO claim for lost earnings from their business activities because they had been injured in their "business or property." *See, e.g. Hunt v. Weatherbee,* 626 F.Supp. 1097, 1101 (D.Mass.1986) (plaintiff forced out of job and disabled for future such work asserts a claim for injury to her "business or property" within the meaning of § 1964(c)); *Rodonich v. House Wreckers Union, Local 95,* 627 F.Supp. 176, 180 (S.D.N.Y. 1985) (allegation of lost wages asserts an injury to "property" under § 1964(c)); *but see Grogan v. Platt,* 835 F.2d 844 (11th Cir. 1988).

In the event that while alive Robert M. Kubecka and Barstow had brought RICO claims under § 1964(c) and had died before the litigation was concluded, their executrices could have succeeded to their claims and recovered on behalf of their estates. RICO claims survive the death of a plaintiff. *See, e.g., Faircloth v. Finesod,* 938 F.2d 513, 518 (4th Cir.1991); *Costello v. Cooper,* 1990 WL 9856 *2 (S.D.N.Y. Jan. 31, 1990).

But Section 1964(c) identifies the "person" who may "sue" as someone who has been injured in "his" business or property. The only "property" that a decedent's New York personal representative has as "his" has not been injured. That property consists of a claim under the New York wrongful death statute. The value of that claim has not been "injured" by the murder.

Moreover, under the New York wrongful death statute the personal representative does not step into the shoes of the decedent; she is not even entitled on behalf of the decedent's estate to assert a claim for his loss of earnings. The claim asserted by the representative belongs exclusively to "distributees" who have suffered "pecuniary injuries." EPTL §§ 5–4.1(1) and 5–4.3(a). *See, e.g., Parilis v. Feinstein,* 49 N.Y.2d 984, 429 N.Y.S.2d 165, 166, 406 N.E.2d 1059 (1980); *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 51 (2d Cir.1984).

The personal representatives in this case are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c), and, within the meaning of § 1961(3), they have a "legal interest" in the claim for the lost earnings of the decedents for the benefit of the distributees. But neither has been "injured in [her] business or property" by reason of "the RICO violation." The court holds that the personal representatives of the decedents are not entitled to sue under § 1964(c). Their remedy is a claim under the New York wrongful death statute on behalf of the "distributees." In that claim they may seek punitive damages if such damages would have been recoverable had their decedents survived. EPTL 5–4.3(b).

■ The individual plaintiffs also say they were injured in their business and property because they incurred expenses to protect themselves and their families from Avellino, Casso and their associates. But plaintiffs' fears for their personal safety and any expenses incurred in an attempt to allay such fears are not injuries to "business or property" within the meaning of section 1964(c). *See Bennett v. Centerpoint Bank,* 761 F.Supp. 908, 916 (D.N.H.1991).

## STANDING OF PLAINTIFF CORPORATIONS TO BRING RICO CLAIMS

■ The Kubecka Corporations' claims under § 1964(c) allege that they were injured in their "business or property" by the elimination of their two key executives by defendants.

The Kubecka Corporations are, of course, "persons" within the meaning of § 1964(c). They have made sufficient allegations that they have been "injured" in their "business or property" by asserting that their executives were murdered and thereby removed as executives of the Kubecka Corporations.

In *National Organization for Women, Inc. v. Scheidler,* — U.S. —, —, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994), the complaint of two corporate health care centers alleged RICO claims under § 1964(c), saying that the defendants conspired to use force to induce members of the clinic staff to stop working and patients to obtain medical services elsewhere, and threatened the clinic administrator with reprisals if she refused to quit her job. The complaints said that the defendants thereby injured the "business or property" of the health care centers. The Supreme Court held that these allegations stated a claim under RICO for injury to "business or property."

The murders of Robert M. Kubecka and Barstow caused them to stop working, thereby inflicting injury to the "business or property" of the Kubecka Corporations. The corporate plaintiffs have standing to bring the RICO claims.

## SUFFICIENCY OF THE PLEADING OF THE RICO CLAIM AGAINST DEFENDANT CORPORATIONS

■ The defendant corporations say the complaint does not give them "fair notice" of the RICO claim and the grounds on which it rests, citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

The complaint makes, in substance, the following statements as to the defendant corporations.

Both corporations are and were engaged in the carting industry and operated and controlled by Avellino. He, the defendant cor-

porations, and others associated with the carting industry in Long Island, formed a cartel to control that industry and to obstruct law enforcement efforts to uncover and prosecute their crimes. Avellino, as the person controlling the defendant corporations, conspired to prevent and did prevent the Kubeckas and the Kubecka corporations from competing with the carters controlled by Avellino.

In 1984 Avellino and Salem Corporation were indicted in Suffolk County, New York, for coercing the Kubeckas. Thereafter Avellino pleaded guilty to coercion, and Salem Corporation to attempted coercion. From August 1982 through December 1983 Avellino, acting for himself and Salem Corporation and SSC Corporation, bribed Town of Huntington officials to cause them to vote for a rate increase for carters in the town. In 1984 he pleaded guilty to such a charge. In 1985 Salem Corporation, controlled by Avellino, unlawfully placed garbage in the Town of Islip dump without paying the required fees.

All the above crimes were motivated by a desire to extort tribute from companies in the carting industry, to enrich, among others, Avellino, SSC Corporation and Salem Corporation. When Avellino arranged for and caused the murders of the decedents, he was acting on behalf of himself and the defendant corporations.

These allegations give adequate notice of plaintiffs' claims that Avellino operated and controlled the defendant corporations and that on their behalf as well as on behalf of himself he caused the murders.

Under section 1961(1) of RICO a racketeering act is defined to include "any act or threat involving murder—which is chargeable under state law" and punishable by imprisonment for more than one year. New York Penal Law § 20.20(2)(b), concerning the criminal liability of corporations, provides, in relevant part, that a corporation is guilty of an offense when the conduct constituting the offense "is engaged in, authorized, solicited, requested, commanded, or recklessly tolerated by a high managerial agent acting within the scope of his employment and in behalf of the corporation."

New York Penal Law § 20.20(1)(b) defines "high managerial agent" as "an officer of a corporation or any other agent in a position of comparable authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employees." No one could more clearly meet this definition than a person such as Avellino, who allegedly operated and controlled the defendant corporations.

The fact that, as the complaint alleges, Avellino got permission of the hierarchy of the Lucchese Family to arrange the murder and in that sense was also acting on its behalf is not inconsistent with the allegations that he acted on behalf of the defendant corporations.

The defendant corporations argue that the complaint does not state a claim against them under 18 U.S.C. § 1962(c) making it unlawful for any "person" associated with an enterprise to "conduct or participate in the conduct" of its affairs through a pattern of racketeering activity. They say the complaint makes no sufficient allegations that they had "some degree of direction" or "some part in that direction" of the enterprise's affairs, as required by *Reves v. Ernst & Young,* 507 U.S. 170, ——, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993).

A corporation can only act through its officers or agents. Where an agent such as Avellino operates and controls the corporations and takes part in the direction of the enterprise on behalf of the corporations, those corporations may be said to have had some part in its direction. *Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367, 380 (6th Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994); *Adler v. Berg Harmon Assocs.,* 816 F.Supp. 919, 929 (S.D.N.Y.1993).

### RICO STATUTE OF LIMITATIONS

The moving defendants assert that the RICO claims are time barred. A civil action under RICO § 1964 has a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The action accrues on the date the plaintiff discovers or should have discovered the injury

caused by the defendants regardless of when that RICO violation occurred. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988), *cert. denied* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989).

The decedents were murdered on August 10, 1989. At that time, the plaintiff corporations were, of course, aware of and had "discovered" the injury. The plaintiffs' claims then accrued, and the statute of limitations began to run. But, as the Court of Appeals for the Second Circuit observed in *Bankers Trust Co. v. Rhoades,* "[n]aturally, as with all rules of accrual, the standard tolling exceptions apply." *Id.,* at 1105. .

■ Plaintiffs invoke two tolling doctrines, equitable estoppel and equitable tolling. The first has no proper application in this case. It assumes that the plaintiff knows he has been injured by the defendant and that the defendant has taken active steps to prevent him from suing in time, as, for example, by promising not to plead the statute of limitations. *See, e.g., Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–51 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

■ The second doctrine, equitable tolling, is pertinent here. It tolls the limitation period though the plaintiff knows he has been injured but cannot in the exercise of due diligence discover information critical to his claim. *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). Typically the plaintiff cannot make the discovery because the defendant has fraudulently concealed the information. But this need not be so; it is enough that plaintiff remains in ignorance of the vital information "without any fault or want of diligence or care on his part." *Id. See also Cada,* 920 F.2d at 451–52.

■ Although the murders occurred on August 10, 1989, the complaint was not filed until June 24, 1994. The complaint says that all the witnesses as to the roles of Avellino and Casso in the killings were allegedly members of, or associated with, the Lucchese Crime Family. They conspired to conceal the truth concerning the identity of those responsible and specifically of the complicity of Avellino and Casso. They agreed to murder any one of the witnesses that made such disclosure. Plaintiffs say that as a result they could not and did not discover critical elements of their claims against Avellino and Casso until those two were indicted, the indictment was made public in April 1993, and Avellino pleaded guilty to the murders in February 1994.

While the plaintiff corporations knew on August 10, 1989 that they had suffered injury, they allegedly did not know, and could not with due diligence discover, some of the other vital elements of their RICO claim against the individual and corporate defendants. The facts as to who participated in arranging the murders and the manner in which those murders were related to the RICO enterprise were, according to the complaint, closely guarded secrets among the defendants and others.

The complaint states sufficient facts to raise the issue of whether the four-year RICO statute of limitations is subject to equitable tolling.

The moving defendants argue that plaintiffs' claim of equitable tolling of the statute of limitations has been insufficiently pleaded because the alleged fraudulent concealment does not meet the prerequisites of Rule 9(b) of the Federal Rules of Civil Procedure. That rule provides, in pertinent part, that "averments of fraud" shall be stated "with particularity."

This argument misconceives the nature of the doctrine of equitable tolling. As explained above, such tolling does not depend on the defendants' fraud but on the inability of the plaintiffs to discover the essential facts. In any event, it is hard to see how plaintiffs could have pleaded with more particularity the concealment of the facts by the organized crime conspirators and their corporate entities.

### JURISDICTION OVER STATE LAW CLAIMS

The administratrices have asserted against defendants New York state law claims for battery and wrongful death and seek damages for the pain and suffering of the dece-

dents while they were alive and for the pecuniary injuries to the distributees of the decedents. Jerry Kubecka makes a New York state law claim for loss of the services of his son. For reasons already stated none of these individual plaintiffs has a valid RICO claim. Since the parties to the state law claims are not of diverse citizenship and those claims raise no federal question, this court has no jurisdiction of the individual plaintiffs' state law claims unless Section 1367(a) of Title 28 grants it.

That section provides, in pertinent part, and with exceptions not relevant here, that in an action where the district courts have original jurisdiction they "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States constitution." The subsection adds a final sentence reading: "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

In 1989 in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Supreme Court held that under the rubric of "pendent" jurisdiction a plaintiff could not bring claims involving added parties over whom no independent basis of subject matter jurisdiction existed. Congress then adopted Section 1367 to remove the restrictions imposed by *Finley* over "supplemental jurisdiction." The section extended the federal jurisdiction over related claims to the constitutional limit under Article III. H.R. No. 734, 101st Cong., 2d Sess., 27–30, *reprinted in* 1990 U.S.C.C.A.N. pp. 6802, 6873–6876.

■ By its terms the section authorizes this court to exercise jurisdiction over any supplemental claims forming part of the same "case or controversy" as that litigated in the claim providing the basis for the court's original federal jurisdiction, even if those claims involve the joinder or intervention of additional parties.

■ Provided there is "a common nucleus of operative fact," *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130,

1138, 16 L.Ed.2d 218 (1966), there is one case or controversy within the meaning of Article III of the Constitution. The RICO claims of the corporate plaintiffs against the defendants and the state law claims of the individual plaintiffs against the defendants depend on a common nucleus of operative facts, namely, the murders of the decedents.

Ordinarily the effect of § 1367 will be to allow the court to add as a party a defendant over whom there is no original federal jurisdiction. Here the defendants are the same in both the RICO and the state law claims. But in the light of the above rulings of this court, the plaintiffs are different. Since all the parties and all the claims are part of the same case or controversy Section 1367 contemplates that the court has supplemental jurisdiction over the state law claims. The section permits the "joinder or intervention" of any "additional parties" and does not restrict the joinder or intervention to parties defendant. Such a holding was made by the Court of Appeals for the Second Circuit in *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1181–82 (1993).

This court has jurisdiction over the entire case and controversy.

## SUFFICIENCY OF STATE LAW CLAIMS

As noted above, the administratrices, on behalf of the estates they represent, make New York state law claims against all defendants for damages due to the decedents' physical and mental pain caused by the battery resulting in death. As personal representatives they also make wrongful death claims on behalf of the "distributees" of their respective decedents. Jerry Kubecka has made a claim for damages for what he characterizes as the "loss of services" of his son "in respect to the operation" of the business and "other services" Jerry Kubecka was incapable of performing due to ill health.

■ As explained above, the corporate defendants may be held criminally liable under New York law when a high managerial agent acts within the scope of his employment and on their behalf. Similarly, and intentional tort committed by a corporate officer as the managing agent of the corpora-

tion constitutes an intentional tort by the corporation. *Aetna Casualty & Surety Co. v. Shuler,* 72 A.D.2d 591, 421 N.Y.S.2d 87 (App. Div., 2d Dep't 1979) (shooting by corporate officer and managing agent).

██ For reasons already stated, the complaint sufficiently alleges that Avellino was such an agent and acted so as to make SSC Corporation and Salem Corporation liable for injuries inflicted on their behalf. The administratrices may make their state law claims against them. EPTL § 11–3.2.

Whether there is a valid claim by Jerry Kubecka for "loss of services" of his son is unclear. The complaint states that Robert M. Kubecka was trained for and learned the garbage carting business of his father, became "completely responsible" for its operation, and rendered other services to his father, "who was incapable of performing these duties himself because of ill health."

To the extent the claim is for the loss to Jerry Kubecka for the injury suffered by the Kubecka Corporations, the claim is, for the reasons given above, not one for injury proximately caused to Jerry Kubecka by the alleged acts of defendants.

██ To the extent that the claim is to recover for loss of services due to the death of Robert Kubecka, Jerry Kubecka has no standing. A claim for wrongful death can be brought only by the decedent's personal representative and only to recover for the surviving distributees' "pecuniary injuries." *See, e.g., Meroni v. Holy Spirit Ass'n for Unification,* 119 A.D.2d 200, 506 N.Y.S.2d 174, 178 (2d Dep't 1986).

██ Under New York law a father may recover from a tortfeasor for the loss from the injury of services of a child. *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 754 (2d Cir.1984); *Bartlett v. General Electric Co.,* 90 A.D.2d 183, 457 N.Y.S.2d 628, 630 (3d Dep't 1982). But the recovery by the father is restricted to the loss of the services of the son that would have been rendered between the infliction of the injury and death. *Ohnmacht v. Mt. Morris Electric Light Co.,* 66 A.D. 482, 73 N.Y.S. 296 (1901). Where a son is killed instantaneously the father has no claim. *Id.*

It is unclear from the complaint how long Robert M. Kubecka lived after the assault upon him. The claim for battery alleges that he suffered "great physical and mental pain, and died on August 10, 1989." It seems likely that any services the son could have rendered between the time of the battery and the time of death are insignificant.

In any event, for the reasons hereafter stated, the battery claims are barred by the statute of limitations.

## STATUTE OF LIMITATIONS FOR STATE LAW CLAIMS

The New York statute of limitations is one year for battery claims, New York Civil Practice Law and Rules (CPLR) § 215, and two years for wrongful death claims, EPTL § 5–4.1(1). The moving defendants say both types of claims are barred.

██ The New York courts have held that they have the power to bar the assertion of a statute of limitations where the defendant has concealed his wrongdoing and thus produced a delay between the accrual of a cause of action and the institution of suit. *General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337, 340, 219 N.E.2d 169, 171 (1966).

██ The complaint states that Avellino and Casso conspired with others to keep secret their wrongdoing and used fraudulent and violent means, including intimidation of witnesses and threats of murder, to that end. The complaint alleges that Avellino's acts were on the behalf of the defendant corporations and that as a result of the conspiracy to keep the wrongdoing secret the plaintiffs were unable to discover the causes of action against not only Avellino and Casso but also against the defendant corporations until the indictment of Avellino and Casso was made public. The court records show that date as April 12, 1993.

That date was more than a year before the filing of the complaint. Even if the limitation period as to the battery claims was tolled by Avellino's wrongdoing, those claims are barred by the one year limitation period in CPLR § 215.

If the alleged facts concerning claimant can be established, the wrongful death claims were timely brought because the two year limitations' period in EPTL § 5–4.1(1) would have been tolled until a time when that period had not expired.

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

 Plaintiff corporations have moved for summary judgment on their RICO claims against Avellino and the defendant corporations.

Plaintiffs' papers are insufficient to warrant a conclusion that the four year RICO statute of limitations was in fact tolled for a length of time to make timely the filing of the complaint in June 1994. There is no affidavit in the record from any of the plaintiffs as to when they learned, or should have learned in the exercise of due diligence, enough facts to require the tolling to end. There is a conclusory affidavit executed by plaintiffs' attorney that plaintiffs commenced the action "as soon as they ascertained the facts relevant to meet RICO's pleading requirement." This is an inadequate basis for granting a motion for summary judgment.

Moreover, as to defendant corporations, there is a genuine issue of fact as to whether Avellino owned or controlled them.

The court need not now decide whether there are other issues of fact that preclude summary judgment.

### DEFAULT JUDGMENT AGAINST CASSO

Casso was served with the summons and complaint on September 1, 1994. To date he has apparently not appeared in the action. If the clerk of the court so certifies, the court will enter judgment against Casso.

### CONCLUSION

The RICO claims by plaintiffs Nina S. Kubecka, Cathy Lynn Kubecka–Barstow, and Jerry Kubecka are dismissed. Plaintiffs' state law claims for battery are dismissed as barred by the applicable statute of limitations. The motion to dismiss is in all other respects denied. Plaintiffs' motion for summary judgment on the remaining RICO claims is denied. Upon appropriate certificate of the clerk of the court a default judgment may be entered against defendant Anthony Casso.

So ordered.