D. Lawrence **BURDICK**,
Plaintiff–Appellant,

v.

**AMERICAN EXPRESS COMPANY**,
Defendant–Appellee.

No. 1227, Docket 88–7216.

United States Court of Appeals,
Second Circuit.

Argued June 6, 1988.
Decided Jan. 13, 1989.

Andrew S. O'Connor, New York City (Liddle & O'Connor, Grais & Richards, New York City, of counsel), for plaintiff-appellant.[1]

Gerald Kerner, New York City (Brett F. Summers, Willkie Farr & Gallagher, New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, MINER and MAHONEY, Circuit Judges.

PER CURIAM:

Plaintiff-appellant D. Lawrence Burdick appeals from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, *Chief Judge*, dismissing his civil RICO complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted, on the ground that Burdick lacked standing to sue under 18 U.S.C. § 1964(c) (1982). 677 F.Supp. 228. The district court concluded that plaintiff's complaint did not allege a claim for damages suffered "by reason of a violation of section 1962 of this chapter" within the meaning of section 1964(c). This appeal ensued. We affirm.

In reviewing the dismissal of this complaint, we assume its allegations to be true. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)). According thereto, Burdick is a former vice president of Shearson Lehman Brothers, Inc. ("Shearson"), a wholly owned subsidiary of defendant American Express Company ("American Express"). While employed at Shearson, plaintiff became aware of certain allegedly illegal practices engaged in by Shearson and its employees that constituted a pattern of racketeering activity. Specifically, Burdick claims that when Shearson received payments of dividends and interest with respect to securities held in street name by Shearson for the benefit of its customers, it systematically failed to credit the dividend and interest payments to its customers' accounts on the dates the payments were received. Rather, before crediting the funds to its customers' accounts, Shearson used the funds for its own corporate purposes for approximately six to nine days, thereby earning millions of dollars in ill-gotten interest. Further, Shearson falsely represented the situation to its customers in monthly statements transmitted in the United States mails.

In addition, Burdick claims that Shearson encouraged its registered representatives to churn their customers' accounts through "bait and switch" tactics in order to earn excessive commissions, in violation of 15 U.S.C. § 78j(b) (1982) and Rule 10b–5 promulgated thereunder. Burdick allegedly complained of these corrupt practices on numerous occasions to his supervisors and others, to no avail, and also refused to participate in such activities. As a result, he was fired on June 29, 1984.

Burdick then brought this action seeking treble damages pursuant to section 1964(c), claiming that he was discharged "as a result of" his complaints about Shearson's illegal activities, and in order for Shearson to acquire his valuable client base. Burdick alleged that Shearson[2] violated 18 U.S.C. § 1962(c) (1982) through a pattern of mail fraud and securities fraud. Defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). As noted earlier, the district court granted defendant's motion, holding that plaintiff was not injured "by reason of" Shearson's alleged mail and securities fraud within the meaning of the section 1964(c), and there-

---

**1.** Andrew S. O'Connor and the firm Liddle, O'Connor, Finkelstein & Robinson, apparently successor to Liddle & O'Connor, withdrew as counsel to plaintiff-appellant subsequent to the argument of the appeal in this case.

**2.** In view of our disposition of this appeal, we do not reach the problems Burdick posed for himself by naming only American Express as a defendant, but alleging the commission of specific illegalities only by the subsidiary, Shearson.

fore had no standing to bring a civil RICO suit.

Plaintiff makes two claims on this appeal. First, he contends that the district court erred in concluding that a plaintiff in a civil RICO action must allege that he was injured by reason of predicate acts that were directed at him as opposed to others. Second, plaintiff argues that his discharge and loss of his client base were sufficiently related to the predicate acts to confer standing. These claims are without merit.

The statute here in issue, 18 U.S. C. § 1964(c) (1982), provides as follows:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*Id.*

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court concluded that a "plaintiff only has standing [under § 1964(c)] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* at 496, 105 S.Ct. at 3285. That is, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* at 497, 105 S.Ct. at 3285. Accordingly, in order to establish standing, Burdick must show that the damage to his business or property resulted from the alleged mail and securities fraud, the predicate acts constituting the violation in this case. A careful review of Burdick's complaint demonstrates that he cannot meet this requirement.

With respect to the failure promptly to credit dividends and interest and the related allegations of mail fraud, Burdick claims that Shearson breached its fiduciary duty *to its customers* by failing promptly to credit the interest and dividends to them, and instead using the funds for Shearson's own gain. The securities fraud allegations are equally clear that any injury was inflicted upon Shearson's customers, through the charging of excessive commissions by Shearson's registered representatives. In sum, the complaint on its face is devoid of allegations that Burdick's own business or property was injured as a result of Shearson's predicate acts.

Burdick contends, however, that these frauds not only damaged his customers, but also "interfere[d] with [his] ability to service his customers, keep them happy and earn a living for himself." This, he claims, is injury to his business or property sufficient to confer standing. However, this type of harm is simply too remotely related to the predicate acts of mail and securities fraud to support a claim under RICO. *See Sperber v. Boesky*, 849 F.2d 60, 64–65 (2d Cir.1988); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers Nat'l Bank*, 759 F.2d 542, 545 (6th Cir.1985).

Plaintiff's second claim, that he was discharged "as a result of" his complaints concerning Shearson's fraudulent activities, fares no better. In this regard, the First Circuit recently upheld the dismissal of a discharged employee's RICO claims brought against his prior employer on standing grounds, stating: "None of these alleged offenses harmed Nodine in his business or property. His injury resulted from Textron's decision to fire him after he reported the [illegal] scheme to his superiors. Firing Nodine under these circumstances was wrong, but it did not violate the RICO Act." *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir.1987) (footnote omitted); *see Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1204–06 (1st Cir.1987); *Morast v. Lance*, 807 F.2d 926, 932–33 (11th Cir.1987). We agree with these rulings. As to Burdick's claim that he was discharged as an integral part of the illegal scheme, rather than in retaliation for reporting it, we are in agreement with the observation in *Pujol* that a differentiation between "preventive" and "retaliatory" dis-

missals in this context would serve no useful purpose. *Pujol,* 829 F.2d at 1205.

Accordingly, the judgment of the district court is affirmed.