**Roy Den HOLLANDER, Plaintiff,**

v.

**FLASH DANCERS TOPLESS CLUB, et al., Defendants.**

No. 03 Civ. 2717(PKC).

United States District Court, S.D. New York.

Sept. 28, 2004.

Order Amending Memorandum and Order and Denying Reconsideration Oct. 28, 2204.

---

**211.** *Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 507 (2d Cir.1996) (quotation marks and citation omitted).

454

Roy Den Hollander, New York City, for Plaintiff.

Edward S. Rudofsky, Zane & Rudofsky, Bradley Evan Dubin, McManus, Collura & Richter, P.C., Nelson Michael Stern, Nelson M. Stern, Attorney, Vikrant Pawar, Corporation Counsel of the City of New York, Bruce Alan Claugus, Claugus & Mitchell, Michael Davis Valasco, New York City, for Defendants.

*MEMORANDUM AND ORDER*

CASTEL, District Judge.

Plaintiff Roy Den Hollander ("Den Hollander") brings this action *pro se* against

what he alleges to be a criminal enterprise that spans the globe, from New York to Russia to Chechnya to Cyprus to Mexico. The defendants are alleged to be members of the enterprise and include plaintiff's former wife, her mother, associates and divorce lawyers, various exotic dancing clubs, members of alleged organized crime groups, modeling and escort agencies, a Cypriot bank and New York City police detective. Various other actors are identified by partial name or by fictitious appellation ("Maria—Prostitute Recruiter for Julia Heart Agency," "Krasnodar Briber 1," "California Pimp," "Mexican Organized Criminal Gang 1," "Chechen Criminal Gangs 1 to 2"). Plaintiff's Complaint, some 90 pages and over 900 paragraphs in length, spins a tale of a dark netherworld of international intrigue and deception, detailing an alleged criminal enterprise among the defendants (the "Enterprise") that engaged in extensive criminal activities, including, but by no means limited to, drug trafficking, money laundering, immigration fraud, prostitution, pornography, extortion and fraud, in an effort "to infiltrate and expand its illegal and ancillary legal activities into hard currency markets, especially the United States" (the "Scheme"). (Complaint ¶¶ 1–2, 13, 15) Plaintiff asserts claims under the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, in order to redress the alleged injury to plaintiff arising out of his discovery of this Scheme. Plaintiff also asserts various state law causes of actions.

Defendants Kuba, Mundy & Associates, Nicholas J. Mundy (together, "Mundy"), Peter Petrovich ("Petrovich"), Cybertech Internet Solutions, Inc. ("Cybertech"), Detective Robert W. Henning ("Henning"), Bank of Cyprus, Ltd. ("Bank of Cyprus"), Dr. Marc Paulsen ("Paulsen"), and Alina Shipilina ("Shipilina"), together with Flash Dancers Topless Club, Jay–Jay Cabaret, Inc., Lynn Lepofsky, "Barry–Night Manager Flash Dancers" and "Flash Dancers Managers 1 to 5" (collectively, "Flash Dancers defendants"), now move to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6), Fed. R.Civ.P.[1] Defendants also move to dismiss the Complaint for failing to plead fraud with the particularity required by Rule 9(b), Fed.R.Civ.P. Defendants seek to dismiss the state law claims either because they fail to state a claim or because the Court, in their view, ought not exercise supplemental jurisdiction.[2] For the reasons set forth herein, defendants' motion is granted, and plaintiff's Complaint is dismissed with prejudice.

*Factual Background*

Because the Complaint includes some 900 paragraphs of allegations against the

---

1. Separate motion papers were filed by defendants Mundy, Petrovich, Henning and the Bank of Cyprus. Defendants Paulsen, Shipilina, Cybertech and the Flash Dancers defendants filed papers joining, to the extent applicable, the motion filed by the Mundy defendants, and in some cases filed separate reply papers. Defendants also filed various affidavits attempting to put certain exhibits before the Court. In opposition to the motions, plaintiff, without prior consent of the Court and in contravention of my Individual Practices, filed a 147–page memorandum of law, along with an affidavit and exhibits, and a Motion to Strike certain material contained in defendants' affidavits. I find it unnecessary to consider any materials outside the Complaint in deciding the motions to dismiss and I grant plaintiff's Motion to Strike.

2. Because of my disposition of this motion, it is not necessary to reach the claims of lack of *in personam* jurisdiction asserted by defendant Petrovich. At a July 13, 2004 conference, the Court dismissed the Complaint without prejudice as to all domestic defendants who, as of then, had not been served, including the fictitious defendants.

Enterprise and its members, many of which are not necessary to my decision on the motion, I will not detail all of the alleged criminal activities and predicate acts outlined in the Complaint.[3] I note that a large number of the allegations are made on information and belief. For purposes of deciding this motion, I have, as required by the dictates of Rule 12(b)(6), accepted the well-pleaded allegations as true.

In brief plaintiff, a lawyer, member of the bar of this Court and former consultant for Kroll Associates in Moscow, alleges that the Enterprise has damaged his business, and that in the process he has been "drugged, defrauded, coerced and threatened ... with severe bodily harm." (Complaint ¶ 3) According to the Complaint, plaintiff was lured into the web of the Enterprise in July 1999 when he met, and eventually married, his former wife, defendant Shipilina. (Complaint ¶¶ 128–140) Plaintiff alleges that his former wife is "a lucrative member of the Enterprise," and details the criminal activities that he asserts she has engaged in as part of the Enterprise, including "running prostitution, aiding pornography rings, laundering money, smuggling drugs and building relationships among Russian, Chechen and American organized crime groups."

(Complaint ¶ 36) He also alleges, on information and belief, that Ms. Shipilina and another member of the Enterprise "decided to target the plaintiff as part of the Enterprise's ongoing Scheme to infiltrate and expand its operations in the U.S." (Complaint ¶ 135), and that, by "win[ning] the devotion and cloud[ing] the mind of plaintiff by secretly feeding him narcotics" (¶ 137), they would "use the plaintiff as an unwitting means for ... Shipilina to fraudulently enter America where she would participate in expanding the Enterprise's activities" (¶ 136). To that end, plaintiff and defendant Shipilina were married on March 11, 2000 in Krasnodar. (Complaint ¶ 36) The couple chose the March date because, according to the Complaint, it "would follow the end of plaintiff's consultancy with Kroll Associates." (Complaint ¶ 173) Plaintiff subsequently became suspicious of his wife's activities and motives, and in August 2000, "launched an investigation that continues to the present day and ended up diverting [plaintiff] from his law and consulting business for two years." (Complaint ¶ 217)

As a result of his initial investigation and continued suspicion of the Enterprise's Scheme, plaintiff sought a divorce from defendant Shipilina. Plaintiff alleges, in

3. Complaint ¶¶ 320–465 set forth "Other Criminal Operations by the Enterprise that Impact the U.S.," detailing an alleged worldwide operation for the distribution of prostitutes, pornography and narcotics with a nexus to Krasnodar, Moscow and St. Petersburg in Russia; California, Wisconsin and New York in the United States; Cyprus and Mexico. Paragraphs 466–683 set forth the alleged predicate acts for each of the defendants (including, *inter alia,* mail fraud, "white slavery," witness tampering, distribution of pornography, money laundering, murder-for-hire and bribing foreign officials) and the relevant statutory provisions alleged to have been violated. Paragraphs 684–853 set forth "Other Criminal Acts by Defendants," along with the federal and state statutes allegedly violated by

each defendant. Paragraphs 854–873 detail "Plaintiff's Efforts to Obtain Assistance from Enforcement Agencies and State Courts," and ¶ 874 alleges the effect of the Enterprise's activities on interstate commerce, including, *inter alia,* to "[i]ncrease the risk of sexually transmitted diseases among interstate and foreign customers" and to "[i]ncrease health insurance premiums nationwide by increasing the incidents of diseases among some of the insureds." Paragraphs 875–885 set forth allegations alleged to demonstrate a pattern of racketeering activity by defendants. Finally, ¶¶ 886–899 incorporate the preceding allegations and set forth causes of action under 18 U.S.C. §§ 1962(a)-(d) and state law, and ¶¶ 900–914 set forth plaintiff's claim for damages.

considerable detail, that, as a result of his desire to divorce Ms. Shipilina, defendants Kuba, Mundy & Associates (his wife's lawyers), New York Police Department Detective Henning, and others filed false documents and reports with the INS and the NYPD, and engaged, with the help of other defendants (including the "Baraev Islamic Terror and Crime Clan," the "Asypyan Criminal Association" and other "gangsters"), in a campaign of intimidation and threats of violence (aided by the payment of bribes to public officials in the Untied States and Krasnodar) to prevent plaintiff from "providing testimony to any U.S. authorities, including the New York divorce court" and the INS about Ms. Shipilina's immigration status and the Enterprise's illegal activities. *See* Complaint ¶¶ 220–319.

Plaintiff alleges that the defendants' actions outlined above, along with numerous other acts set forth in the Complaint, constitute, *inter alia,* "white slavery" in violation of 18 U.S.C. § 2421, misuse of visas in violation of 18 U.S.C. § 1546, concealment of prostitution activities in violation of 18 U.S.C. § 1341, unlawful procurement of nationality in violation of 18 U.S.C. § 1425, intimidation and witness tampering in violation of 18 U.S.C. § 1512, bribing of Russian public officials in violation of 18 U.S.C. § 1952, murder for-hire in violation of 18 U.S.C. § 1958, counterfeiting of visas in violation of 18 U.S.C. § 1546, importing pornography for distribution in violation of 18 U.S.C. §§ 1462 and 1465, foreign travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952 and intimidating plaintiff in violation of 18 U.S.C. § 1343, and constitute sufficient predicate acts to create a "pattern of racketeering activity" and give rise to a RICO violation.

By letter dated August 23, 2004, in accordance with this Court's individual practices, plaintiff sought leave to file a motion to supplement his Complaint. Attached to that letter was a proposed "Supplemental Complaint," which purports to "update the earlier Complaint ... with subsequent occurrences and events that relate to the original Complaint...." The Supplemental Complaint, drafted with defendants' motions to dismiss in hand, consists of allegations of additional "predicate acts," including the continued harassment of and interference with plaintiff as a result of his investigation of the Enterprise and its Scheme, and defendant Shipilina's obstruction of justice by filing false and misleading documents in this case. The only allegation in the Supplemental Complaint relating to causation and damages is that "[t]he Enterprise's additional illegal activities recounted in this supplemental complaint have increased the harm to the plaintiff's business and property by causing loss of profits, business interruption expenses, loss of business opportunities and damage to the plaintiff's reputation and good will in the amount of $100,000." (Supplemental Complaint ¶ 77) [4]

Rule 15(d) provides that the court may permit a party to supplement his pleadings to set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Rule 15(d), Fed.R.Civ.P. Although defendants object to the proposed Supplemental Complaint on the grounds that few, if any, of the events set forth in the Supplemental Complaint every really happened (*see* Letter from Jack Sachs dated August 30, 2004 at 1), it is not the Court's role at this stage of the litigation to assess the truth or validity of plaintiff's allegations, no matter how fanciful they appear or how difficult they may be to prove. I grant plaintiff leave to file the

---

4. The Supplemental Complaint also adds four new defendants—Magomet Ali Kurban, Viktor Vladimirovich Kononenko, "Bareaev Mobster 1" and Cynthia D. Zahnow.

Supplemental Complaint and, in reviewing the adequacy of plaintiff's pleadings on these motions to dismiss, I will consider the Complaint and Supplemental Complaint.

## Legal Standard

It is axiomatic that in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations as true and draw all inferences in favor of plaintiff. *Levy v. Southbrook International Investments, Ltd.*, 263 F.3d 10, 14 (2d Cir.2001), *cert. denied*, 535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821 (2002). For purposes of this motion, I have accepted, without deciding, that the allegations would otherwise state a claim under section 1962 and have restricted my examination to whether plaintiff has adequately alleged the causation and injury necessary under section 1964(c).

■ "Dismissal is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "This rule applies with particular force ... where the complaint is submitted *pro se....* At the 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Id.* at 701

(citations omitted). As a result, where a plaintiff is proceeding *pro se,* the Court must construe the pleadings liberally, and must "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

■ In order to state a claim for civil remedies, including treble damages, under RICO, a plaintiff must allege both that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, and that he was "injured in his business or property *by reason of* a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added).[5] To satisfy the "by reason of" language of section 1964(c), a plaintiff must demonstrate both injury and causation. To do so, he must allege facts demonstrating both that plaintiff's injury is to his business or property—and not physical, emotional or reputational harm or any economic aspect of such harm—and that plaintiff's injury is proximately caused by the acts constituting the RICO violation. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 257 (2d Cir.2004) (vacating 12(b)(6) dismissal finding that competitor had standing to assert a RICO claim); *Manson v. Stacescu*, 11 F.3d 1127 (2d Cir.1993), *cert. denied*, 513 U.S. 915, 115 S.Ct. 292, 130 L.Ed.2d 206 (1994); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir.1984),

---

**5.** Section 1962(a) makes it unlawful for any person to use or invest income derived from a pattern of racketeering activity towards the acquisition, establishment or operation of an enterprise engaged in or affecting interstate commerce. Section 1962(b) makes it unlawful for any person to acquire or maintain an interest in an enterprise engaged in or affecting interstate commerce through a pattern of racketeering activity. Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Finally, section 1962(d) makes it unlawful to conspire to violate any of the previous sections.

*vacated on other grounds,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1180 (7th Cir.1989); *Grogan v. Platt,* 835 F.2d 844, 847 (11th Cir.) ("[P]ecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to 'business or property'."), *rehearing denied,* 851 F.2d 1423 (11th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988); *Shaw v. Rolex Watch U.S.A., Inc.,* 776 F.Supp. 128, 134–35 (S.D.N.Y.1991) (emotional distress and physical injury not cognizable under RICO). "[A] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Sedima,* 473 U.S. at 496–7, 105 S.Ct. 3275 (citations and internal quotation omitted). Thus, to survive a motion to dismiss, plaintiff must allege facts demonstrating that the unlawful activity in question was both the proximate cause of an injury compensable under the statute and the actual cause. Here, even taking plaintiff's allegations as true and assuming, for purposes of this motion only, that plaintiff's allegations would state a claim for a violation of sections 1962(a)-(d), plaintiff has failed to meet his burden with respect to pleading causation under section 1964(c).

First, many of plaintiff's claimed injuries, including damages to plaintiff's "business reputation and good will" (Complaint ¶¶ 902–903, 907(e)) and "imperil[ing] his safety, life, liberty and right not to live in fear" (¶ 905), simply are not the type of injuries to "business or property" that are actionable under RICO. *See Holmes,* 503 U.S. at 265–68, 112 S.Ct. 1311; *Manson,* 11 F.3d at 1132–33; *Shaw,* 776 F.Supp. at 134–35. Second, to the extent that plaintiff seeks compensation for "loss of profits," "business interruption expenses," "loss of business opportunities" and inves-

tigation expenses (¶ 907), even if these could constitute the type of injuries contemplated by the statute, plaintiff alleges that they all arose out of "plaintiff's ongoing investigation of the Enterprise's Scheme" (¶ 907(a), (d)). As set forth in more detail below, because plaintiff's injuries are alleged to arise from his discovery and investigation of the Enterprise, plaintiff has not adequately alleged proximate causation, and lacks standing to bring his claim.

*Lack of Proximate Causation*

■ A RICO pattern or predicate act has proximately caused a plaintiff's injury if it is "a substantial factor in the sequence of responsible causation, *and* if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990) (emphasis added); *see also Ideal Steel,* 373 F.3d at 257; *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 123 (2d Cir.), *cert. denied,* — U.S. ——, 124 S.Ct. 532, 157 L.Ed.2d 424 (2003). It is not enough to allege that but-for the alleged violation, the alleged injury would not have occurred. *In re American Express Co. Shareholder Litigation,* 39 F.3d 395, 399 (2d Cir.1994). The real issue is "was the plaintiff in the category of people meant by the statute to be safeguarded, and was the harm that which the act meant to avoid?" *Abrahams v. Young & Rubicam Inc.,* 79 F.3d 234, 237 n. 3 (2d Cir.), *cert. denied,* 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996). The Second Circuit has "repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise." *Lerner,* 318 F.3d at 124. As a result, courts routinely find that the proximate cause requirement is not met, and plaintiffs lack standing to assert a civil RICO claim, where the plaintiff's injuries are caused

not by the RICO violations themselves, but by the exposure of those acts, or where plaintiff seeks to recover for injuries caused by his refusal to aid and abet the violations.

For example, in *American Express,* the Second Circuit upheld a Rule 12(b)(6) dismissal of a RICO complaint where the alleged injuries were not proximately caused by the alleged racketeering injures of fraud and bribery, but rather were caused by the fact that those activities did not have their intended effect and instead were uncovered and exposed by their intended target. 39 F.3d at 396. In that case, shareholders of American Express brought a civil RICO action against the company based on the deceitful acts of defamation directed toward a former board member and competitor, Edward Safra, by certain employees of American Express. *Id.* at 396–98. Plaintiffs asserted standing based on the derivative pecuniary injury they suffered when the company experienced some $10 million in losses (including damage to "business reputation and goodwill") following the revelation of the acts directed at Mr. Safra. *Id.* at 398, 400. The Second Circuit found that plaintiffs, although injured, had not adequately alleged causation because the acts that caused the injury (principally the defamation of Mr. Safra and attendant circumstances) were directed at Mr. Safra, and not the shareholders or the company. *Id.* at 400. The *American Express* Court found that "[t]he injuries alleged thus were neither the 'preconceived purpose' nor the 'specifically-intended consequence' of the RICO defendants' acts. Moreover, any losses to American Express were caused only because the scheme itself was exposed and thus failed. Therefore, the harm to American Express was neither the 'necessary result' of the scheme nor ... 'foreseeable'...." *Id.;* see also *Young & Rubicam,* 79 F.3d at 238–39 (upholding dismissal for failure to

state a claim where plaintiff was not injured by the scheme itself but rather "by the fallout from the scheme's exposure"); *Hecht,* 897 F.2d at 24 (upholding dismissal where plaintiff "was 'neither the target of the racketeering enterprise nor the competitor[ ] nor the customer[ ] of the racketeers,'" but rather an employee who lost his job and anticipated commissions because of his failure to aid and abet his employer's RICO violations) (alterations in original; citations omitted). Specifically, the Second Circuit found that

"[T]he commission of the RICO violations was not what injured American Express. Rather, it was the exposure of those acts that caused the appellants' harm.... Any fair reading of the complaint in the instant case discloses that the RICO defendants' 'preconceived purpose' was most assuredly not to cause some $10 million in losses to American Express. Instead, the complaint consistently alleges that the RICO defendants' actions, however misguided and injurious to American Express in the end, were undertaken to further American Express's competitive interests.... The injuries alleged thus were neither the 'preconceived purpose' nor the 'specifically-intended consequence' of the RICO defendants' acts." 39 F.3d at 400.

Similarly, in *Hecht, supra,* the Second Circuit upheld dismissal of allegations that made it clear that the plaintiff was not a target of the § 1962(d) conspiracy, but discovered the conspiracy and was discharged for threatening to disclose it. 897 F.2d at 24.

As the core allegations of plaintiff's Complaint in this case make clear, plaintiff's alleged injuries arise not as a result of any conspiracy directed at him, but rather as a result of his discovery and investigation of that conspiracy. The gravamen of plaintiff's Complaint is that the

defendants sought to "infiltrate and expand its illegal and ancillary legal activities into hard currency markets" (Complaint ¶ 2); that is, to generate profits in the United States from the Enterprise's illegal prostitution, pornography, money laundering and other activities. (Complaint ¶¶ 1–2, 13 and *passim*) The factual allegations detailing these activities largely predate plaintiff's "discovery" of the Scheme in August 2000, and are not alleged to have caused plaintiff injury. Plaintiff's damages allegations, set forth in paragraphs 900–914 and read in the context of the factual allegations of the Complaint, further make clear that the damages he seeks arise from his discovery of the alleged Scheme, and not from the original purpose of the Scheme itself or any of the acts taken to effect that Scheme. To be sure, plaintiff alleges that defendants took actions directed at him—including threats of physical harm—that he deems "predicate acts," and that the Enterprise has harmed "his business reputation and goodwill" (*see* Complaint ¶¶ 902, 903), but as plaintiff himself asserts, any such injury—even if it were the type of injury compensable under RICO—arose from his discovery of the Scheme in August 2000 and his "investigation that continues to the present day" (Complaint ¶ 217).[6]

Plaintiff, in essence, portrays himself in his pleadings as a whistleblower, albeit one who is having a difficult time being heard. As the Second Circuit has made clear in the context of employee whistleblowers, retaliation for such actions, even if it results in financial harm in the form of job loss, does not give rise to RICO standing. *See Hecht, supra*, 897 F.2d at 24; *Burdick v. American Express Co.*, 865 F.2d 527 (2d Cir.1989).

In *Burdick*, while employed at the defendant company, plaintiff became aware of illegal practices that he alleged constituted a pattern of racketeering activity. Plaintiff complained about the practices, and refused to participate in such activities. As a result, he was fired. He subsequently brought an action seeking treble damages under section 1964(c). 865 F.2d at 528–29. The Second Circuit found that "in order to establish standing, [plaintiff] must show that the damage to his business or property resulted from the alleged mail and securities fraud, the predicate acts constituting the violation in this case. A careful review of [plaintiff's] complaint demonstrates that he cannot meet this requirement." 865 F.2d at 529. The Second Circuit further found that "Plaintiff's second claim, that he was discharged 'as a result of his complaints concerning Shearson's fraudulent activities, fares no better.... His injury resulted from [defendant's] decision to fire him after he reported the [illegal] scheme to his superiors. Firing [plaintiff] under these circumstances was wrong, but it did not violate the RICO Act.'" *Id.* (quoting *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir.1987)) (other citations omitted).

That plaintiff's claimed damages in this case were caused by alleged retaliation for his discovery and subsequent investigation of the Scheme is highlighted in that por-

---

**6.** Although plaintiff does include general allegations that, *inter alia,* "plaintiff has suffered damages to his business and financial interests by the use of funds from racketeering activities to finance the Enterprise's Scheme" (¶ 900; *see also* ¶¶ 904–906), this Court need not accept such conclusory allegations for purposes of this motion. *American Express,* 39 F.3d at 400 n. 3 ("[W]hile the complaint does cursorily assert that [plaintiff] was a victim of the RICO defendant's acts and that these acts were the proximate cause of American Express's alleged injuries, these conclusory allegations of the legal status of defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss.") (citations omitted).

tion of his Complaint that attempts to quantify his damages: there, plaintiff itemizes such damages as "expenses ... for the plaintiff's investigation and efforts to avoid and rectify injury from the Enterprise's Scheme" and "plaintiff's ongoing investigation of the Enterprise's Scheme in order to prevent and rectify injury to the plaintiff" (Complaint ¶¶ 907(a)-(e)). Although plaintiff conclusorily alleges as well that he has sustained damages to his "reputation and good will as a result of the false allegations made against the plaintiff in carrying out the Enterprise's Scheme" (Complaint ¶ 907(e)), the factual allegations in the Complaint make clear that plaintiff, while perhaps a means of effecting the Scheme, was not a target of the Scheme, and the object of the Scheme itself was to expand a prostitution and pornography empire "into the U.S. hard currency markets" and not to cause harm to plaintiff's reputation and goodwill or business. Indeed, taking plaintiff's allegations as true, the success of the Scheme depended on a *lack* of harm to plaintiff, for it was through plaintiff and with plaintiff's (perhaps unknowing) cooperation that the Enterprise hoped to succeed in infiltrating the United States. The aim of even those alleged predicate acts aimed directly at plaintiff, such as bodily threats and harassment, was not to cause injury to plaintiff's business or property, but rather, to prevent him from interfering with defendant Shipilina's efforts to obtain legal residency and, therefore, extend the Enterprise's Scheme into the U.S. hard currency markets. *Cf. Manson, supra*, 11 F.3d at 1132–33 (affirming dismissal of RICO complaint where plaintiff alleged threats "which were made to intimidate him and to stop him from investigating the alleged scheme"). That plaintiff would put his legal and consulting businesses on hold to investigate the Enterprise simply is not a reasonably foreseeable consequence of the predicate acts alleged; indeed, plaintiff's resistance to and investigation of the Scheme is what the predicate acts, as alleged, were designed to prevent. As a result, plaintiff has not alleged causation and injury within the meaning of section 1964(c), and therefore has not stated a cause of action under the civil RICO statute.

Because I find that plaintiff has failed to adequately allege causation and injury—that is, that he was injured by reason of any purported violation of section 1962—I need not determine whether he has adequately alleged a violation of the substantive RICO statute.

### State Law Claims

Defendants also move to dismiss plaintiff's state law claims for intentional infliction of emotional distress, abuse of process and malicious prosecution. Because I find that plaintiff's RICO claims must be dismissed, this Court lacks subject matter jurisdiction to hear the state law claims. In light of the early stage of this litigation, the Court declines to assert supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) provides that a district court "may" decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).

The Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of

factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir.2003); *see also Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir.1993) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). The balance of factors to be considered includes judicial economy, convenience, fairness and comity. *Valencia*, 316 F.3d at 305.

Because this Court has dismissed all federal causes of action under the RICO statute, the court declines to exercise supplemental jurisdiction over the state law causes of action. While district courts are capable and are bound to apply the state law to claims, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *New York v. Niagara Mohawk Power Corp.*, 263 F.Supp.2d 650, 670 (W.D.N.Y.2003). This is especially true where neither the courts nor the parties have yet invested time or other resources in conducting discovery or otherwise preparing this case for trial. Judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over the remaining state law claims and, accordingly, they are dismissed.

*Leave to Amend*

■■ A Court generally should not dismiss a *pro se* complaint " 'without granting leave to amend a least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir.2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991)). Here, however, plaintiff is a lawyer and member of the bar of this Court. He has demonstrated that he is capable of drafting a detailed pleading, supplemented when necessary by additional allegations. Under Rule 15(a), Fed.R.Civ.P., although leave to amend a pleading should be "freely given when justice so requires," amendment is not permitted when to do so would be futile—in other words, when the amended pleading would not itself withstand a motion to dismiss. *See Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001); *Whimsicality, Inc. v. Battat*, 27 F.Supp.2d 456, 466 (S.D.N.Y.1998). The sheer length and detail of plaintiff's Complaint, which sets forth in great detail the investigation into the allegations that plaintiff has already conducted, makes clear that plaintiff has put forward his best case for relief. Indeed, having been fully apprised of the bases for the motions to dismiss, he sought leave to file a Supplemental Complaint, which leave I have granted. Plaintiff made no request to file an amended Complaint in the event the motions to dismiss were granted. Even the most liberal reading of the Complaint and Supplemental Complaint fails to indicate that, however restated, any valid claim would survive. *See Manson, supra*, 11 F.3d at 1133 (holding that amendment would be futile where plaintiffs did not have standing to sue under RICO). As a result, I dismiss the Complaint and Supplemental Complaint with prejudice.

*Conclusion*

Plaintiff's request for leave to file the "Supplemental Complaint" (dated August 23, 2004) is granted and the Supplemental Complaint is deemed filed. Plaintiff's Motion to Strike Exhibits Q–Z of defendants' Reply Memorandum for Failure to Authenticate (Docket Number 59) is granted. Defendants' Motions to Dismiss the Complaint (Docket Numbers 21, 26, 28 and 62), as supplemented, is granted. Plaintiff's Complaint and the Supplemental Complaint are dismissed with prejudice. Plain-

tiff's Motion for Default Judgment (Docket Number 47) is denied as moot.

SO ORDERED.

### ORDER AMENDING MEMORANDUM AND ORDER AND DENYING MOTION FOR RECONSIDERATION

Plaintiff moves to reconsider my Memorandum and Order of September 28, 2004. His principal argument is that the Court failed to consider his 147-page memorandum in opposition to the motion to dismiss. Contrary to plaintiff's assumption, it was thoroughly and carefully considered by the Court.

Although I considered plaintiff's memorandum, I incorrectly stated that it violated the page limits in my Individual Practices. Accordingly, footnote 1, page 1, of my Memorandum and Order is amended to delete the phrase ",without prior consent of the Court and in contravention of my Individual Practices,". As amended, it reads as follows:

> Separate motion papers were filed by defendants Mundy, Petrovich, Henning and the Bank of Cyprus. Defendants Paulsen, Shipilina, Cybertech and the Flash Dancers defendants filed papers joining, to the extent applicable, the motion filed by the Mundy defendants, and in some cases filed separate reply papers. Defendants also filed various affidavits attempting to put certain exhibits before the Court. In opposition to the motions, plaintiff filed a 147-page memorandum of law, along with an affidavit and exhibits, and a Motion to Strike certain material contained in defendants' affidavits. I find it unnecessary to consider any materials outside the Complaint in deciding the motions to dismiss and I grant plaintiff's Motion to Strike.

Except insofar as the above amendment is ordered, the motion to reconsider is denied.

SO ORDERED.